No. 23-1765

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

SOUTHWESTERN ELECTRIC POWER COMPANY AND
ARKANSAS ELECTRIC COOPERATIVE CORPORATION

*Petitioners,*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY AND
MICHAEL S. REGAN, ADMINISTRATOR, UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY

*Respondents,*

———————————————

COMMONWEALTH OF MASSACHUSETTS, ET AL.

*Amici on Behalf of Respondents.*

**PETITIONERS SOUTHWESTERN ELECTRIC POWER
COMPANY AND ARKANSAS ELECTRIC COOPERATIVE
CORPORATION'S REPLY BRIEF**

*PETITION FOR REVIEW OF AN ORDER OF THE
ENVIRONMENTAL PROTECTION AGENCY*

G. Alan Perkins, Ark. Bar No. 91115
Sarah Tacker, Ark. Bar No. 2002189
PPGMR Law, PLLC
P.O. Box 3446
Little Rock, AR 72203
Telephone: (501) 603-9000
Facsimile: (501) 603-0556
alan@ppgmrlaw.com
sarah@ppgmrlaw.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................... i

TABLE OF AUTHORITIES ............................................................. ii

INTRODUCTION ........................................................................... 1

ARGUMENT .................................................................................. 4

   I.  Standard of Review ............................................................. 4

   II.  EPA's Disapproval of Arkansas SIP violates the CAA .................... 5

   III. EPA's Disapproval of Arkansas's SIP was arbitrary and capricious. ............................................................................ 10

     A.  Modeling ..................................................................... 10

     B.  Threshold ................................................................... 14

   IV. Relitigating venue is improper. .......................................... 19

   V.  EPA's requested relief is improper. .................................... 23

CONCLUSION .............................................................................. 28

CERTIFICATE OF COMPLIANCE ...................................................... 29

Appellate Case: 23-1765     Page: 3     Date Filed: 01/22/2024 Entry ID: 5355294

# TABLE OF AUTHORITIES

**Cases**

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n,*
 988 F.2d 146 (D.C. Cir. 1993)................................................................24

*Am. Rd. & Transp. Builders Ass'n v. E.P.A.,*
 705 F.3d 453 (D.C. Cir. 2013)................................................................22

*Ass'n of Battery Recyclers, Inc. v. E.P.A.,*
 208 F.3d 1047 (D.C. Cir. 2000)..............................................................10

*Bennett v. Spear,*
 520 U.S. 154 (1997)................................................................................14

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
 467 U.S. 837 (1984)..................................................................................6

*City of Arlington v. FCC,*
 569 U.S. 290 (2013)..............................................................................6, 7

*Data Mktg. P'ship, LP v. United States Dep't of Lab.,*
 45 F.4th 846 (5th Cir. 2022) ..................................................................25

*E.P.A. v. EME Homer City Generation, L.P.,*
 572 U.S. 489 (2014)..............................................................................7, 8

*EME Homer City Generation, L.P. v. E.P.A.,*
 795 F.3d 118 (D.C. Cir. 2015)................................................................24

*Encino Motors, LLC v. Navarro,*
 579 U.S. 211 (2016)..........................................................................11, 18

Appellate Case: 23-1765     Page: 4     Date Filed: 01/22/2024 Entry ID: 5355294

*Friends of Boundary Waters Wilderness v. Bosworth,*
437 F.3d 815 (8th Cir. 2006) .................................................... 4

*Loper Bright Enters., Inc. v. Raimondo,*
45 F.4th 359 (D.C. Cir. 2022), *cert. granted,*
143 S. Ct. 2429 (2023) ........................................................... 7

*McCuen v. Am. Cas. Co.,*
946 F.2d 1401 (8th Cir.1991) ............................................... 20

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 29 (1983) .................................................................. 4

National Lifeline Association v. FCC,
921 F.3d 1102 (D.C. Cir. 2019) ..................................... 25, 26

*North Dakota v. EPA,*
730 F.3d 750 (8th Cir. 2013) ............................................. 4, 5

*Nyffeler Constr., Inc. v. Sec'y of Lab.,*
760 F.3d 837 (8th Cir. 2014) ..................................... 19, 20, 21

*Patterson v. Tenet Healthcare, Inc.,*
113 F.3d 832 (8th Cir. 1997) ................................................. 7

*Rohr v. Reliance Bank,*
826 F.3d 1046 (8th Cir. 2016) ............................................. 24

*Sierra Club v. E.P.A.,*
356 F.3d 296 (D.C. Cir. 2004) ............................................. 13

*Sierra Club v. E.P.A.,*
47 F.4th 738 (D.C. Cir. 2022) ............................................. 23

iii

*Solis v. Summit Contractors, Inc.*,
    558 F.3d 815 (8th Cir. 2009)...................................................................7

*State of Arkansas et al. v. EPA, et al.*,
    No. 23-1320 (8th Cir. May 25, 2023)..................................................26

*Texas v. E.P.A.*,
    983 F.3d 826 (5th Cir. 2020)..............................................................23

*Union Pac. R.R. Co. v. Surface Transportation Bd.*,
    863 F.3d 816 (8th Cir. 2017)..........................................................7, 23

*United States v. Mead Corp.*,
    533 U.S. 218 (2001).............................................................................6

*United States v. Stanko*,
    762 F.3d 826 (8th Cir. 2014).........................................................20, 21

*United Steel v. Mine Safety & Health Admin.*,
    925 F.3d 1279 (D.C. Cir. 2019).....................................................24, 27

*Voigt v. Coyote Creek Mining Co., LLC*,
    980 F.3d 1191 (8th Cir. 2020)..............................................................8

*Voigt v. Coyote Creek Mining Co., LLC*,
    999 F.3d 555 (8th Cir. 2021)................................................................9

*Williams v. Emps Mut. Cas. Co.*,
    845 F.3d 891 (8th Cir. 2017)..............................................................20

## **Statutes**

42 U.S.C. § 7410(a) ........................................................................................8

Appellate Case: 23-1765    Page: 6    Date Filed: 01/22/2024    Entry ID: 5355294

42 U.S.C. § 7410(k)(1)(B)..............................................................5

42 U.S.C. § 7410(k)(3)............................................................. 4, 5

42 U.S.C. § 7607(b)(1)........................................................21, 22

5 U.S.C. § 706(2)(A) ...............................................................23

5 U.S.C. § 706(2)(C) ...............................................................23

**<u>Other Authorities</u>**

87 Fed. Reg. 9798 (Feb. 22, 2022) ........................................2, 12

88 Fed. Reg. 67102 (Sept. 29, 2023) ........................................26

88 Fed. Reg. 9336 (Feb. 13, 2023) ..................... 1, 5, 11, 12, 15, 17

Appellate Case: 23-1765    Page: 7    Date Filed: 01/22/2024 Entry ID: 5355294

## INTRODUCTION

Petitioner Southwestern Electric Power Company ("SWEPCO") owns or co-owns six fossil-fuel electric generating units ("EGUs") operating in Arkansas, two coal fired-units and four gas units. Petitioner Arkansas Electric Cooperative Corporation ("AECC") owns or co-owns six coal-fired EGUs and 12 gas-fired EGUs for the benefit of its Arkansas customers. EPA's actions in the Final Rule titled "Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards," published in the Federal Register at 88 Fed. Reg. 9336 (February 13, 2023) disapproving Arkansas's State Implementation Plan ("SIP") (the "Disapproval") will significantly impact the Arkansas EGUs. EPA's Disapproval is arbitrary and capricious and subverts EPA's role designated in the Clean Air Act (the "CAA").

EPA's Response Brief acknowledges that it developed guidance and recommendations expressly for states' use in developing their SIPs. Resp. Br. at 39-40, ECF No. 5335228. Further, it recognizes that Arkansas expressly relied upon that guidance and recommendations. *Id*. EPA concedes it developed new data, modeling, and methodologies that were not available to Arkansas at the time of its statutory SIP-submission

1

deadline. Resp. Br. at 33, ECF No. 5335228. In its Response Brief, EPA further admits that it issued its Proposed Disapproval of Arkansas's SIP for the 2015 ozone NAAQS more than two years after Arkansas timely submitted its SIP—more than a year after EPA was required to act under the CAA. Resp. Br. at 42, ECF No. 5335228; 87 Fed. Reg. 9798, 9811 (February 22, 2022), App. 2242. Importantly, EPA acknowledges that the Arkansas SIP largely followed the 4-step framework that EPA uses when evaluating SIPs. Resp. Br. at 43, ECF No. 5335228. But instead of honoring Arkansas's primary role in determining significant contribution under the Good Neighbor Rule, EPA substituted its own analysis in the Disapproval and assigned a numerical value for significance that Arkansas did not have notice of when developing its SIP. *Id.* at 132. With this action through the Disapproval, EPA completely skips an entire step of its own 4-step framework—conducting a multi-factor analysis to identify the emissions reductions necessary (if any) of the State's significant contributions to downwind states. Far from "redefining" significance as EPA claims, Arkansas conducted a thorough analysis under the required 4-step framework, relying in part on the most recent

2

guidance provided by EPA. Resp. Br. at 153, ECF No. 5335228; App. 2037-2126.

The Disapproval has an outsized impact on SWEPCO and AECC. EPA's replacement Federal Implementation Plan (FIP) will require SWEPCO and AECC to install emission control technology on its EGUs at a significant cost, currently estimated at $645,000,000. Such costs would require SWEPCO and AECC to reevaluate the scheduled retirement dates of crucial fossil fuel generation units and place additional strains on an already-struggling grid. App. 2329-33; 2485-96.

Through its Disapproval, EPA violated its role in cooperative federalism under the CAA. The Court should find that EPA's actions in disapproving Arkansas's SIP were arbitrary and capricious. The Court should also reject EPA's improper request to relitigate venue as well as its request for the exceptional remedy of remand without vacatur.

## ARGUMENT

## I.    Standard of Review

This Court will set aside a final rule issued by EPA "if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' or 'in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.'" *North Dakota v. EPA*, 730 F.3d 750, 758 (8th Cir. 2013); Resp. Br. at 85, ECF No. 5335228.

> A decision is arbitrary and capricious if the agency relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs contrary to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Friends of Boundary Waters Wilderness v. Bosworth*, 437 F.3d 815, 822 (8th Cir. 2006) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)). EPA acted outside the bounds of its authority under the CAA, in that states have the "primary responsibility" for attaining NAAQS, and EPA is directed to approve a SIP if it meets the statutory requirements in 42 U.S.C. § 7410(k)(3), which it failed to do. Further, the arbitrary and capricious Disapproval entirely supplanted Arkansas's SIP based on EPA guidance with EPA's

4

own untimely and newly developed datapoints and conclusions. 88 Fed. Reg. at 9336, App. 0001.

## II.    EPA's Disapproval of Arkansas SIP violates the CAA.

EPA spends considerable time in its Response Brief exhibiting a misunderstanding of SWEPCO and AECC's actual issues with the Disapproval. The Parties are in lock step with the understanding that EPA's role under the CAA is to review SIP submissions to ensure that they meet all applicable requirements of the CAA. *See e.g.*, Resp. Br. at 115-128, 133, ECF No. 5335228. SWEPCO and AECC have not conflated EPA's administrative completeness review under 42 U.S.C. § 7410(k)(1)(B) with EPA's substantive review to determine whether a state's analysis is reasoned and "moored to the Act's provisions." *North Dakota*, 730 F.3d at 761 (finding that EPA was arbitrary and capricious in refusing to consider existing pollution control technology at a regulated facility, where governing provision required consideration of any kind of control technology used at the source); 42 U.S.C. § 7410(k)(3); *see* Resp. Br. at 119, ECF No. 5335228. Neither fact is in dispute. Rather, SWEPCO and AECC submit that EPA abrogated its role under the Good

Appellate Case: 23-1765    Page: 12    Date Filed: 01/22/2024 Entry ID: 5355294

Neighbor Provision when it did not give appropriate consideration to Arkansas's analysis of its emission control plan at the SIP stage.

EPA argues that its Disapproval requires deference under *Chevron*. Resp. Br. at 88, 130-131, ECF No. 5335228 (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 843 (1984) (When a court reviews an agency's interpretation of a statute which it administers, the court must consider: 1) whether Congress has directly spoken on the precise question at issue; and 2) if a statute is silent or ambiguous, whether the agency's interpretation is permissible). Yet EPA misapplies *Chevron* with its bypass of the initial *Chevron* step—determining whether *Chevron* applies at all. *City of Arlington v. FCC*, 569 U.S. 290, 296 (2013) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). This initial step turns on whether "the agency interpretation claiming deference was promulgated in the exercise of [delegated] authority." *United States v. Mead Corp.,* 533 U.S. 218, 227 (2001). "[F]or *Chevron* deference to apply, the agency must have received congressional authority to determine the particular matter at issue in the particular manner adopted." *Union Pac. R.R. Co.*

6

*v. Surface Transportation Bd.,* 863 F.3d 816, 824 (8th Cir. 2017) (quoting *City of Arlington*, 569 U.S. at 296).

EPA asserts that this Court is required to apply *Chevron* deference, despite the Supreme Court recently granting certiorari to consider whether *Chevron* deference should be overturned. *See Loper Bright Enters., Inc. v. Raimondo,* 45 F.4th 359 (D.C. Cir. 2022), *cert. granted*, 143 S. Ct. 2429 (2023); Resp. Br. at 88, note 41, ECF No. 5335228 (citing *Solis v. Summit Contractors, Inc.,* 558 F.3d 815, 828 (8th Cir. 2009)). However, *Solis* acknowledges that this Court is not bound by prior panel decisions when "the earlier panel decision is cast into doubt by a decision of the Supreme Court." *Id.* (citing *Patterson v. Tenet Healthcare, Inc.,* 113 F.3d 832, 838 (8th Cir. 1997)). Even if *Chevron* were appropriate here, the Court is not bound by it because *Chevron* has been cast into doubt by the Supreme Court.

Even when *Chevron* applies, the Supreme Court has held that, in determining whether "the Good Neighbor Provision delegates [interpretive] authority to EPA" for purposes of *Chevron*, the Court must carefully consider the nature of "EPA's task." *E.P.A. v. EME Homer City Generation, L.P.,* 572 U.S. 489, 513-514 (2014). The Parties agree that

7

*EME Homer* is instructive to the question before the Court. *See* Resp. Br. at 125, ECF No. 5335228. In *EME Homer*, the Court reasoned that the task of reducing "upwind pollution…in 'amounts' that push a downwind State's pollution concentrations above the relevant NAAQS" belonged to EPA because it was promulgating FIPs. *Id.* at 514. In contrast, the Court noted that although it spoke of "EPA's task" in that instance, "the Good Neighbor Provision is initially directed to upwind States...only after a State has failed to propose a SIP adequate for compliance with the provision is EPA called upon to act." *Id.* at 514, n.15. Here, EPA was not called upon to act by way of a FIP, and for this reason, *Chevron* deference is not appropriate here. The Good Neighbor Provision delegates to states the primary role of interpretive authority at the SIP stage. *See* 42 U.S.C. § 7410(a). EPA does not receive deference for imposing non-statutory requirements on states at the SIP stage, even if such deference might be appropriate at the FIP stage. See *EME Homer*, 572 U.S. at 514, n.15.

EPA also argues that this Court cannot "defer to *state* agencies' interpretations of the federal Clean Air Act." Response Brief p. 88, citing Stras dissent in *Voigt v. Coyote Creek Mining Co., LLC*, 980 F.3d 1191, 1202 (8th Cir. 2020). But again, EPA misapplies *Voigt*. In *Voigt*, this

8

Court considered an ambiguous CAA regulation regarding the definition of a coal pile facility. On rehearing, this Court affirmed the state agency's interpretation of the statute, based on EPA's interpretive guidance. *Voigt v. Coyote Creek Mining Co., LLC*, 999 F.3d 555, 562 (8th Cir. 2021). EPA argues that if it were to "defer to each state's interpretation of 'contribute significantly' or 'interfere with maintenance,' states could simply…avoid any implementation of the Good Neighbor Provision." Resp. Br. at 133-134, ECF No. 5335228. This claim is far afield of the facts and appropriate processes that SWEPCO and AECC have already acknowledged—EPA has the statutory duty to review SIP submissions to ensure that they comply with the requirements of the statute. SWEPCO and AECC do not claim that Arkansas can avoid implementation of the Good Neighbor Provision. Rather, only that EPA cannot broadly (and capriciously) dismiss a state's analysis and substitute its own. *See* Resp. Br. at 127-128, ECF No. 5335228 "states enjoy wide discretion to formulate regulatory controls to include in their SIPs…and can adopt whatever mix of enforceable control measures they prefer."

Application of *Chevron* deference to EPA's actions in the Disapproval is inapt. EPA's review authority for Good Neighbor SIPs

9

does not support its attempt to receive *Chevron* deference for the untimely and non-statutory thresholds EPA published and relied upon *years* after the SIP submission, and which contradicted guidance EPA provided to states during the SIP drafting process.

## III. EPA's Disapproval of Arkansas's SIP was arbitrary and capricious.

### A. Modeling

EPA based its Disapproval on new data and modeling that only became available because EPA missed its statutory deadline for review of the SIP. It is patently unreasonable for EPA to expect Arkansas to have developed a new SIP based on EPA's new data and modeling in the one year between the Proposed Disapproval and the Final Disapproval. This course would defeat the entire purpose of notice-and-comment rulemaking: "to allow an agency to reconsider, and sometimes change, its proposal based on the comments of affected persons," *Ass'n of Battery Recyclers, Inc. v. E.P.A.,* 208 F.3d 1047, 1058 (D.C. Cir. 2000). EPA fails completely to provide any support in the CAA or in case law that allows it to apply a *rolling obligation* on states to re-work their SIP submissions any time EPA develops new data and modeling.

Appellate Case: 23-1765     Page: 17     Date Filed: 01/22/2024 Entry ID: 5355294

In any case, developing a new SIP after the Proposed Disapproval was made irrelevant as EPA based the Final Disapproval on an even newer set of modeling and linkages. 88 Fed. Reg. at 9339, App. 0004. EPA attempts to refute the additional untimely switch by arguing that Arkansas was not surprised by EPA's updated modeling and data because EPA provided notice that it intended to use the 2016v2 modeling in the Proposed Disapproval, and the 2016v3 modeling is a "logical outgrowth" of the notice-and-comment process. Resp. Br. at 225-227, ECF No. 5335228. However, the issue here is that Arkansas could not have drafted its SIP submission that analyzed modeling and data that did not exist yet. It is inherently unfair—and arbitrary and capricious— for EPA to encourage Arkansas to develop its SIP based on one set of modeling and data and then, years later, to judge the SIP based on modeling and data that was not available prior to the submission deadline. When justifying a changed position, an agency must also be cognizant that policies may have "engendered serious reliance interests that must be taken into account." *Encino Motors, LLC v. Navarro,* 579 U.S. 211, 221-22 (2016) (internal citations omitted).

Appellate Case: 23-1765     Page: 18     Date Filed: 01/22/2024 Entry ID: 5355294

EPA acknowledges that it developed the new modeling platform showing new and different linkages in other states, and an entire new category of receptors ("violating monitors") prior to the Final Disapproval. Resp. Br. at 36, ECF No. 5335228. But EPA also asserts that the revised modeling is irrelevant to this Petition because it was not dispositive of EPA's Disapproval. Instead, EPA claims that the updated modeling and linkages simply "confirmed" that Arkansas was linked to "at least one" downwind receptor, and there were "not meaningfully different modeling outcomes" between the versions of modeling. Resp. Br. at 227-229, ECF No. 5335228. It is beyond ludicrous to claim that the first set of modeling, identifying impacts in the State of Michigan, and EPA's substituted set of modeling, identifying impact in the State of Texas, is not a *meaningfully different outcome.*

Importantly, EPA's attempt to break up its own analysis and dismiss each part as individually "not dispositive" is an improper *post hoc* rationalization that contradicts the rationale given by EPA in the Disapproval, where it invoked the 2016 modeling as a *key part* of its analysis. Resp. Br. at 227, ECF No. 5335228; App. 2231-32; 87 Fed. Reg. at 9809, App. 2240; 88 Fed. Reg. at 9355, App. 0020. And EPA's approach

12

is impractical: any time a state develops a SIP based on the most current data and guidance provided by EPA, it could wait years (ignoring its statutory deadlines to act) and then disapprove any SIP based on new platforms and linkages not in existence at the time of the SIP submission. Though quite practical if EPA's intent was to disregard the State's role through the SIP process.

EPA next attempts to justify its actions by distinguishing the Disapproval from *Sierra Club* which considered attainment SIPs and required a "current" inventory of emissions under the governing statute. Resp. Br. at 218, ECF No. 5335228. However, that statutory provision upon which EPA relies in its application of *Sierra Club* was not relevant to the court's finding: "To require states to revise completed plans every time a new model is announced would lead to significant costs and potentially endless delays in the approval process." *See Sierra Club v. E.P.A.*, 356 F.3d 296, 308 (D.C. Cir. 2004). *Sierra Club* applies to the Disapproval and its reasoning is just as fitting to the case at hand. As EPA stated, "...in some circumstances, it may be appropriate for EPA to approve states' use of an out-of-date model, where doing so is consistent with the larger objectives of the Act." Resp. Br. at 219, ECF No. 5335228.

13

This is true where, as here, requiring states to redevelop SIPs based on new modeling would further delay implementation. *contra* Resp. Br. at 219-220, ECF No. 5335228.

EPA then pivots to allege that non-state petitioners, such as SWEPCO and AECC, have no reliance interest in the modeling or threshold guidance provided by EPA because SWEPCO and AECC did not develop the SIP themselves. Resp. Br. at 236-237, ECF No. 5335228. However, Arkansas's SIP was created by Arkansas, for Arkansas and its stakeholders, including SWEPCO and AECC. EPA's Disapproval and the subsequent FIP hold costly compliance impacts for SWEPCO and AECC's EGUs, and implementation of the FIP would greatly strain the region's already-tight electric grid. EPA has not challenged SWEPCO or AECC's standing in this case, and EPA's reasoning for its Disapproval is paramount to this Petition. *See Bennett v. Spear*, 520 U.S. 154, 167 (1997). For all these reasons, EPA's Disapproval on the basis of new modeling and data was arbitrary and capricious.

## B. Threshold

In its August 2018 Memo, EPA claimed that a one part-per-billion (ppb) contribution threshold was *likely* appropriate. App. 0638. But when

14

evaluating Arkansas's SIP, EPA reversed its position and declared that 1% was the *appropriate* threshold. 88 Fed. Reg. at 9342, App. 0007. EPA does not dispute that the 1% threshold appears nowhere in the CAA. Resp. Br. at 140, ECF No. 5335228. But it does maintain that the 1% threshold is an appropriate screening tool for determining if a state must proceed with further analysis of whether and how it should reduce emissions. Resp. Br. at 72, 243, ECF No. 5335228. Despite acknowledging that the 1% threshold is not determinative of significance, EPA uses the 1% threshold as a conclusive presumption of significant contribution under the Good Neighbor Rule. *See* 88 Fed. Reg. at 9371, App. 0036. In doing so, EPA circumvents Step 3 of its own 4-step framework and improperly dismisses Arkansas's analysis of *significant* contribution.

EPA uses the 4-step framework to evaluate whether a state considered the necessary factors and whether the determination is one that is reasonably moored to the CAA's provisions. Resp. Br. at 129, ECF No. 5335228. EPA agrees that the Arkansas SIP "generally followed EPA's 4-step framework" and "largely followed" Steps 1 and 2. *Id.* at 43, 152. In its SIP, Arkansas evaluated the single nonattainment linkage it had under the most recent modeling data recommended by EPA and

under the 1 ppb contribution threshold recommended by EPA. Far from seeking a "free pass" from Good Neighbor obligations, Arkansas conducted a multi-factor Step 3 analysis. Resp. Br. at 137, ECF No. 5335228; App. 2037-2126 (analyzing factors such as declining ozone design values at the linked receptor, the amount that Arkansas sources may have contributed to nonattainment, and the projected cost of installing additional, specific NOx controls on EGUs).

In the Response Brief, EPA blithely asserts that Arkansas and the other states' SIPs attempted to show "that they either did not contribute…or did not need to consider additional emissions-control measures." Resp. Br. at 143, ECF No. 5335228. But in such criticisms of Arkansas's Step 3 analysis, EPA penalized and disapproved the SIP for accurately conducting a Step 3 analysis. EPA's conjectural dismissal of Arkansas's substantive Step 3 analysis shows that EPA based its significant contribution conclusion on linkages alone—not on the multi-factor analysis that is laid out by the 4-step framework. For this same reason, the location and number of linkages under the various modeling platforms—that EPA generated after the SIP was submitted—are inherently relevant to Arkansas's analysis of significant contributions.

Without a sufficient linkage, there would be no need for the additional steps where the state assesses whether and how to reduce emissions. 88 Fed. Reg. at 9342, App. 0007. The fact that Arkansas was linked to "at least one" downwind receptor under the different modeling platforms is not sufficient information to conduct a Step 3 analysis; Arkansas was prejudiced by EPA's bait-and-switch. Resp. Br. at 148, ECF No. 5335228. EPA then moves the goalposts again in its Response Brief, stating that "no state conducted an analysis of possible emissions-control strategies," yet contradicts itself when acknowledging Arkansas's consideration and concluding, "Arkansas's consideration of emissions-controls strategies was improperly limited and inadequate." *Id.* at 73, 155.

EPA falls back on its argument that Arkansas should have known better than to rely on EPA's 2018 "recommendation" to consider a 1 ppb contribution threshold. App. 0646; Resp. Br. at 72, 243, ECF No. 5335228. EPA argues that the 2018 Threshold Memo was not notice-and-comment rulemaking. Then tries to distinguish it from the new 1% threshold which had been used in previous notice-and-comment rulemakings. Resp. Br. at 72, ECF No. 5335228. However, *Encino* tells us that departure without reason is arbitrary. And here, EPA fails to

17

support how it was reasonable for it to provide specific guidance for development of the SIP, only to reverse course after the SIP was submitted. *Encino Motorcars,* 579 U.S. at 221-22 (holding that agencies act arbitrarily when they depart without adequate reasoning from even non-binding guidance that has induced reliance)).

EPA has still not rescinded the 2018 Threshold Memo and the Response Brief maintains that a 1 ppb threshold may be approved if a state can prove the "appropriate" circumstances. Resp. Br. at 166, ECF No. 5335228. However, EPA goes on to state that since the 2018 Threshold Memo, its experience has "caused it to doubt whether the Memo's offer to allow states to justify their own thresholds was sound policy." *Id.* at 72. The cooperative federalism structure under the CAA necessitates that states have the first chance at analyzing and addressing their Good Neighbor obligations, but EPA has further flipped this structure by giving states guidance and then changing its mind after the SIPs were submitted. *See* Resp. Br. at 140, ECF No. 5335228 (EPA arguing that while the 1% threshold has no statutory support, Petitioners' methods are also not described in the statute); *see also* at 133 (EPA argues "Arkansas Petitioners provide no reason why states may

18

rely upon "non-statutory" terms when developing SIP submissions but EPA should be barred from doing so when evaluating SIP submissions...") In simple terms, the referee cannot throw the flag, while simultaneously changing the rulebook. EPA improperly denies Arkansas's primary role under the CAA. For all these reasons, EPA's Disapproval on the basis of its threshold analysis was arbitrary and capricious.

## IV. Relitigating venue is improper.

SWEPCO and AECC do not wish to belabor the venue issue that has already been decided by this Court. The motions panel heard EPA's arguments to transfer this case to the D.C. Circuit Court and summarily denied that motion. Order, ECF No. 5281190. EPA argues that the merits panel need not give weight to the denial order because it did not decide venue with "sufficient directness and clarity to establish the settled expectations of the parties," and that the order does not constitute the law of the case. Resp. Br. at 92, ECF No. 5335228 (citing *Nyffeler Constr., Inc. v. Sec'y of Lab.*, 760 F.3d 837, 841 (8th Cir. 2014)). However, EPA's arguments and cited caselaw are easily distinguishable from the matter before this Court, and it is proper for this Court to follow the denial order

and carry on with deciding the merits of this case. Further, allowing the parties to continuously relitigate venue is not in the interest of judicial efficiency.

This Court has noted that in the Eighth Circuit, "an administrative panel's denial of a motion to dismiss for lack of jurisdiction typically 'is the law of the case, ordinarily to be adhered to in the absence of clear error or manifest injustice.' " *United States v. Stanko*, 762 F.3d 826, 828 n.3 (8th Cir. 2014) (per curiam) (reversing administrative panel's denial of motion to dismiss appeal as moot, where panel "clearly erred" by ignoring binding circuit precedent) (quoting *McCuen v. Am. Cas. Co.*, 946 F.2d 1401, 1403 (8th Cir.1991)); *see also Williams v. Emps Mut. Cas. Co.*, 845 F.3d 891, 897 (8th Cir. 2017) (quoting the same); *see* Resp. Br. at 92, ECF No. 5335228. The Court's denial of the motion to dismiss must thus be treated as the law of the case. Further, *Nyffeler* holds that for the law of the case doctrine to apply, "the prior administrative panel must have actually decided the specific jurisdictional issue." *Nyffeler*, 760 F.3d at 842. Because jurisdiction was only one of the three reasons that the administrative panel may have denied the *Nyffeler* motion to dismiss and the panel did not make clear that it "even reached the jurisdictional

20

merits," the *Nyffeler* Court concluded that the law of the case doctrine did not apply in those circumstances and that the Court was able to revisit the jurisdictional question. *Id.*

In this case however, the motion panel's venue decision answered the narrow question of whether this Court is the proper forum under 42 U.S.C. § 7607(b)(1). It was the only issue before the panel. The parties thoroughly briefed the issue before the panel issued its decision. ECF Nos. 5270843, 5274790, 5278746. The panel clearly and directly settled the jurisdiction issue raised by EPA, and that decision is the law of the case here. *Nyffeler*, 760 F.3d at 841-842.

The motion panel "actually decided" the jurisdictional issue and did not "clearly err" in denying EPA's desired transfer, so the merits panel should not overturn that denial. Resp. Br. at 89, note 42, ECF No. 5335228 (citing *Stanko*, 762 F.3d at 828 n.3) (noting the precedence of the law of the question doctrine in the Eighth Circuit, which is applicable when an administrative panel "actually decided the specific jurisdictional issue," although "this Court will still reconsider and overturn that denial if the administrative panel clearly erred").

Regarding EPA's restated arguments that the Disapproval should be reviewed in the D.C. Circuit Court because it is either "nationally applicable" or has a "nationwide scope or effect," SWEPCO and AECC incorporate their arguments briefed before the motions panel. *See* Resp. Br. at 92-114, ECF No. 5335228; 42 U.S.C. § 7607(b)(1). To be clear, the disapproval of a SIP is "the prototypical 'locally or regionally applicable' action that may be challenged only in the appropriate regional court of appeals." *Am. Rd. & Transp. Builders Ass'n v. E.P.A.*, 705 F.3d 453, 455 (D.C. Cir. 2013). EPA's attempt to parse the statute for singular nouns does not change the plain language of the statute. *See* Resp. Br. at 98, ECF No. 5335228. The separateness of each state's SIP Disapproval is further shown by EPA's request for the Court to overturn any state's Disapproval separately if the Court finds a "flaw with the Disapproval as it relates to Arkansas, Minnesota, or Missouri…" Resp. Br. at 271, ECF No. 5335228.

Further, EPA's determination of "nationwide scope or effect" is absolutely reviewable. *See* Resp. Br. at 103, ECF No. 5335228. While EPA has the discretion "to make and publish (or not) a finding of nationwide scope and effect," "A court may review whether an action by

22

EPA … is based on a determination of nationwide scope or effect when EPA so finds and publishes." *Sierra Club v. E.P.A.*, 47 F.4th 738, 746 (D.C. Cir. 2022) (citing *Texas v. E.P.A.*, 983 F.3d 826, 834 (5th Cir. 2020)). EPA's assertion that the Disapproval has "nationwide scope or effect" is not binding on this Court; the motions panel venue determination is. Thus, the motion panel's decision to deny transfer of venue should not be disturbed.

## V.   EPA's requested relief is improper.

EPA requests that if the Court "finds some flaw with the Disapproval," it should "remand to EPA but allow the Disapproval to remain in place pending prompt completion of remand proceedings." Resp. Br. at 271-272, ECF No. 5335228. Remand without vacating the flawed Disapproval would not be the proper disposition of the case.

Under the Administrative Procedure Act, the "reviewing court *shall*…set aside agency action…found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (emphasis added); *see also Union Pac. R.R. Co.,* 863 F.3d at 822 ("Agency action taken without statutory authority must be set aside.") (citing 5 U.S.C. § 706(2)(C)); *Rohr v. Reliance Bank,*

826 F.3d 1046, 1050 (8th Cir. 2016). The statute does not authorize remand without vacatur.

The D.C. Circuit only allows remand without vacatur in "certain limited circumstances," as it "creates a risk that an agency may drag its feet and keep in place an unlawful agency rule." *EME Homer City Generation, L.P. v. E.P.A.,* 795 F.3d 118, 132 (D.C. Cir. 2015); *see also United Steel v. Mine Safety & Health Admin.,* 925 F.3d 1279, 1287 (D.C. Cir. 2019) (stating that the ordinary practice is to vacate unlawful agency action, and remand without vacatur is for "rare" cases). EPA cites the *Allied-Signal* test coming out of the D.C. Circuit. holding that an inadequately supported rule may be remanded without vacatur depending on: 1) the likelihood that the agency's action could be sustained on remand; and 2) the disruption that vacatur would cause. Resp. Br. at 272, ECF No. 5335228; (*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n,* 988 F.2d 146, 151 (D.C. Cir. 1993).

EPA cannot meet the first prong of the *Allied-Signal* test. It attempts to characterize the issues that SWEPCO and AECC have identified with the Disapproval as "procedural defects and record-based deficiencies that EPA could address and correct on remand." Resp. Br.

at 273, ECF No. 5335228. This disregards the substantive and fatal errors that form the basis of the Disapproval. As explained above, EPA disregarded the cooperative federalism required by the CAA and arbitrarily and capriciously based its decision on improperly considered modeling and thresholds. *See supra*-Parts III and IV. EPA cannot cure these deficiencies with additional rounds of notice-and-comment or with *post hoc* explanations of the SIP's "technical flaws." *See* Resp. Br. at 273, ECF No. 5335228; *see also Data Mktg. P'ship, LP v. United States Dep't of Lab.,* 45 F.4th 846, 856 (5th Cir. 2022) (An agency must defend its actions based on the reasons it gave when it acted; the fact that an agency provides *post hoc* rationalization is relevant evidence that the action is arbitrary and capricious).

EPA cites *National Lifeline Association v. FCC* for the assertion that if the Court were to find that the Disapproval was not a logical outgrowth of the Proposed Disapproval and that additional notice-and-comment opportunities were needed, it would not be grounds for the Court to vacate the Disapproval. Resp. Br. at 273, ECF No. 5335228 (citing 921 F.3d 1102, 1117-18 (D.C. Cir. 2019)). In fact, *National Lifeline Association* held the opposite. In that case, the D.C. Circuit Court found

that the FCC made substantive changes to its former policy without holding proper notice-and-comment rulemaking. *Id.* at 1116. The court *vacated* the FCC's challenged order and remanded the matter to the FCC for a new proceeding. *Id.* at 1118. The Disapproval would not be sustainable on remand.

Regarding the second *Allied-Signal* prong—whether vacatur would cause disruption—EPA claims that vacatur "would delay EPA's efforts to implement Congress's mandate that upwind states must prohibit emissions contributing significantly to nonattainment or interfering with maintenance as expeditiously as practicable." Resp. Br. at 274-275, ECF No. 5335228. This conclusion improperly assumes that EPA's position is correct—that upwind states must comply with the FIP. In any case, it is EPA's own years-long delay in acting on Arkansas's timely SIP submission that caused EPA's current timeline concerns. This Court's stay order has (correctly) prevented implementation of the FIP that EPA promulgated for several states, including Arkansas. *State of Arkansas et al. v. EPA, et al.,* No. 23-1320 (8th Cir. May 25, 2023), ECF No. 5280996; *See* 88 Fed. Reg. 67102 (September 29, 2023); App. 2301-3215. EPA could have sought to expedite this appeal, but

instead asked to extend the briefing schedule by months. Resp't Mot. for Extension, ECF No. 5306365. The Court should not grant EPA the extraordinary benefit of remand without vacatur. *United Steel*, 925 F.3d at 1287. Therefore, the Court should follow the ordinary course and vacate the Arkansas SIP Disapproval.

Appellate Case: 23-1765    Page: 34    Date Filed: 01/22/2024 Entry ID: 5355294

## CONCLUSION

EPA upended the cooperative federalism required by the CAA and improperly disregarded Arkansas's analysis in its SIP submission. Further, it was arbitrary and capricious for EPA to issue guidance for the 2015 Ozone NAAQS then disapprove Arkansas's SIP based on an entirely different contribution threshold and modeling. The Court should vacate and remand the portion of the Final Rule that disapproved Arkansas's SIP.

Dated:  January 18, 2024                    Respectfully Submitted,

*/s/ Sarah Tacker*
G. Alan Perkins, Ark. Bar No. 91115
Sarah Tacker, Ark. Bar No. 2002189
PPGMR Law, PLLC
P.O. Box 3446
Little Rock, AR 72203
Telephone: (501) 603-9000
Facsimile: (501) 603-0556
alan@ppgmrlaw.com
sarah@ppgmrlaw.com

*Counsel for Petitioners*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. 28.1(e)(2)(C) because it contains 5,338 words, excluding the parts exempted by Fed. R. App. P.32(f).

I also certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in 14-point Century Schoolbook font, using Microsoft Word.

I further certify that this brief was scanned for viruses, and no viruses were found on the file.

/s/ *Sarah Tacker*
Sarah Tacker

Appellate Case: 23-1765    Page: 36    Date Filed: 01/22/2024 Entry ID: 5355294